FILED

2017 Mar-08  AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **VICKIE ODEN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-cv-00805-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Vickie Oden seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Oden's claims for a period of disability insurance benefits and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Oden applied for a period of disability insurance benefits and supplemental security income on June 25, 2012. (Doc. 5-6, pp. 13-21). Ms. Oden alleges that her disability began on May 21, 2012. (Doc. 5-3, p. 33; 5-6, pp. 13, 15). The Commissioner initially denied Ms. Oden's claims on November 8, 2012.

(Doc. 5-5, p. 2).   Ms. Oden requested a hearing before an Administrative Law Judge (ALJ).   (*Id.* at 12-13).   The ALJ issued an unfavorable decision on February 18, 2014.   (Doc. 5-3, pp. 10-29).   On April 27, 2015, the Appeals Council declined Ms. Oden's request for review (*Id.* at 2-6), making the Commissioner's decision final and a proper candidate for this Court's judicial review.   *See* 42 U.S.C. §§405(g) and 1383(c).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited.   "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"   *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.   "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.   *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).   If the ALJ's factual findings are

supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Oden "has not engaged in substantial gainful activity since May 21, 2012, the alleged onset date." (Doc. 5-3, p. 15).  The ALJ determined that Ms. Oden suffers from "the following severe impairments: status-post bowel resection, cholecystectomy, and appendectomy, irritable bowel syndrome, degenerative joint disease of the right knee status-post arthroscopic surgery, asthma versus COPD, osteoarthritis, low back pain due to osteoarthritis, anxiety, depression, and mild dysthymic disorder." (*Id.*).  The ALJ determined that Ms. Oden has the following non-severe impairments: "headaches, obstructive bronchitis, benign hypertension, hyperlipidemia, and anemia." (*Id.* at 15-16). Based on a review of the medical evidence, the ALJ concluded that Ms. Oden "does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 16).

Given Ms. Oden's impairments, the ALJ evaluated Ms. Oden's residual functional capacity or RFC.  The ALJ determined that Ms. Oden has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to no pushing and pulling with the right lower extremity. The claimant is limited to engaging in occasional stooping and climbing of ramps and stairs only. The claimant is unable to kneel, crawl, or crouch. She can seldom use foot controls, which is defined as less than ten-percent of the time. She is unable to engage in commercial driving. The claimant must avoid exposure to hazards and

she must avoid concentrated exposure to pulmonary irritants such as fumes and gases. The claimant is limited to performing simple tasks.

(*Id.* at 18).  Based on this RFC, the ALJ concluded that Ms. Oden is not able to perform her past relevant work as a "mail carrier, housekeep[er], and general cleaner." (*Id.* at 23).  Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Oden can perform, including information clerk, general office helper, surveillance monitor, and charge account clerk. (*Id.* at 23-24).  Accordingly, the ALJ determined that Ms. Oden has not been under a disability within the meaning of the Social Security Act. (*Id.* at 24).

## IV.   ANALYSIS

Ms. Oden argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give the proper weight to the findings and records of Dr. Pendleton, a treating physician, and because the ALJ failed to properly consider Ms. Oden's subjective complaints of pain.  The Court considers these arguments in turn.

### A.   The ALJ gave proper weight to Dr. Pendleton's findings.

An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's records. *See Winschel*, 631 F.3d at 1179.  An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.

2004).   Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159.   The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor."   *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (internal quotation and citation omitted).

Dr. Thomas Pendleton has treated Ms. Oden since 1998.  (Doc. 5-12, p. 13). In July 2009, Dr. Pendleton opined that Ms. Oden could not return to work for two weeks due to "abdominal pain after surgery, chronic bronchitis and dermatitis and joint pains. She should avoid lifting more than 10 pounds. She should avoid grass due to allergies."  (Doc. 5-8, p. 91).   In an FMLA report that he completed in December 2010, Dr. Pendleton reported that Ms. Oden was hospitalized in September 2009 for two days.  (Doc. 5-12, p. 19).

In April 2010, Dr. Pendleton completed an FMLA report in which he wrote that Ms. Oden suffered from "chronic abdominal pain & diarrhea and colitis [-] anxiety with depression."  (Doc. 5-12, p. 21).   Dr. Pendleton stated that Ms. Oden would require leave from April 30, 2010 until June 13, 2010, and she could return to work on June 15, 2010.  (Doc. 5-12, p. 21).   On May 20, 2010, Dr. Pendleton wrote in a prescription pad note that Ms. Oden had been unable to work since April

6

30, 2010, and she had been hospitalized from May 21, 2010 through May 25, 2010, but she would be able to return to "normal duty" on June 1, 2010."  (Doc. 5-12, p. 24).

Later that year, in December 2010, Dr. Pendleton completed another FMLA report for Ms. Oden.  In the report, he did not describe the nature of Ms. Oden's medical condition, but he stated that the condition began in September 2007, and the "[p]robable duration of the condition" was "unpredictable."  (Doc. 5-12, p. 19). Dr. Pendleton indicated that Ms. Oden could still perform her job functions with the condition, but she should avoid lifting more than 10 pounds.  (Doc. 5-12, p. 19).  Dr. Pendleton wrote that he could not predict the frequency of flare-ups of Mr. Oden's condition or the amount of time that she might be incapacitated because of the condition.  (Doc. 5-12, p. 20).

On July 18, 2012, Dr. Pendleton wrote a generic letter explaining that Ms. Oden was a patient under his care for several medical problems.  Because of those medical problems, Dr. Pendleton stated that Ms. Oden had been unable to work since May 21, 2012 and that she would not be able to return to work for approximately six months.  (*Id.* at 94).

On July 30, 2012, Dr. Pendleton completed a disability report for the Retirement Systems of Alabama.  In it, he asserted that Ms. Oden had degenerative arthritis, a slow response to post-operative care following knee surgery, and

7

chronic depression and anxiety.  (Doc. 5-12, p. 13).  He described Ms. Oden's problems as "chronic progressive and persistent," and he stated that she had "a poor response to surgery."  (Doc. 5-12, p. 14).  Dr. Pendleton opined that Ms. Oden was totally incapacitated and could not continue to perform the requirements of her work as a mail carrier.  (Doc. 5-12, p. 13).

A few months later, in November 2012, Dr. Pendleton again described Ms. Oden as totally disabled when he completed an insurance assessment.  (Doc. 5-12, p. 12).  He diagnosed Ms. Oden with degenerative arthritis, abdominal pain with nausea and diarrhea, and anxiety with depression.  (Doc. 5-12, p. 11).  Dr. Pendleton made objective findings of "arthritis" and "abdominal adhesions."  (*Id.* at 11).  Regarding physical impairments, Dr. Pendleton checked a box to indicate that Ms. Oden had "severe limitation of functional capacity" and that she was "incapable of performing minimal (sedentary) activity."  (*Id.* at 12).  Regarding mental and nervous impairments, Dr. Pendleton checked a box to indicate that Ms. Oden had "significant loss of psychological, personal and social adjustment (severe limitations)."  (*Id.*).  Dr. Pendleton noted that he saw Ms. Oden "every 3 months," and he anticipated no improvement in her condition because her health had been in a "progressive decline" for the previous two years.  (*Id.* at 11-12).

In October 2013, Dr. Pendleton completed another disability report for the Retirement Systems of Alabama.  In the report, he opined that Ms. Oden was

completely incapacitated because of her inability to concentrate due to "inability to focus with severe depression/anxiety, chronic pain, nausea and diarrhea." (Doc. 5-13, p. 38). Dr. Pendleton placed the following restrictions on Ms. Oden: "no lifting over 10 pounds, no driving, no bending, no pushing or pulling." (*Id.* at 39). Dr. Pendleton opined that Ms. Oden could not work as a mail carrier or a maintenance helper. (*Id.* at 38).

The ALJ gave Dr. Pendleton's reports "reduced probative weight." (Doc. 5-3, p. 22). The ALJ assigned little weight to the July 2012 and November 2012 reports because Ms. Oden has

> limited mental health records and despite her complaints of chronic musculoskeletal pain, she exhibited overall normal range of motion following her knee surgery. . . . [Ms. Oden] also had limited treatment for her allergies and with regard to her psychiatric symptoms, [Ms. Oden] exhibited only mild signs of dysthymia during her consultative examination.

(Doc. 5-3, p. 22) (citing Doc. 5-9, pp. 29-32, 39-71; Doc. 5-11, p. 19; Doc. 5-13, pp. 18-31). The ALJ gave reduced weight to Dr. Pendleton's October 2013 report "because the objective medical evidence shows that [Ms. Oden] exhibited normal musculoskeletal signs following her knee surgery. . . . Additionally, there are no studies of [Ms. Oden's] intestinal process that support her claims of constant diarrhea." (Doc. 5-3, p. 22) (citing Docs. 5-3, p. 56; 5-8, pp. 80-89; 5-13, pp. 18-31).

Limited treatment records support Dr. Pendleton's findings regarding Ms. Oden's abdominal pain and arthritis.  With respect to Ms. Oden's abdominal pain, during two of Ms. Oden's more than 10 visits with Dr. Pendleton, Ms. Oden's abdomen was tender upon examination. (Doc. 5-8, pp. 25, 39).  Dr. Pendleton referred Ms. Oden to a surgeon, Dr. Kelley Snow, for an examination of her knee. Dr. Snow diagnosed Ms. Oden with a torn meniscus and discussed treatment options with her.  (Doc. 5-9, p. 4).  In the record of Dr. Snow's consultation with Ms. Oden, Dr. Snow wrote that Ms. Oden reported "nearly constant diarrhea" which Dr. Snow related to abdominal surgery that Ms. Oden had four years earlier. (*Id.*).  Additionally, one-time examiner Dr. Ashley Holdridge diagnosed Ms. Oden with probable irritable bowel syndrome.  (Doc. 5-9, p. 38).  Dr. Holdridge explained that "[t]here are no records recording [Ms. Oden's] surgery or any abdominal imaging, but given the increased frequency of stooling and stomach pain, these might be consistent with irritable bowel syndrome." (*Id.*).

Regarding Ms. Oden's arthritis, in August 2012, one month after her surgery to repair a torn meniscus, Dr. Holdridge noted that Ms. Oden had decreased extension and limited flexion in her right knee.  (Doc. 5-9, p. 37).  Dr. Holdridge noted that Ms. Oden was currently "severely limited by pain" and had "a very antalgic gait."  (Doc. 5-9, p. 38).

On the whole, however, the medical evidence is inconsistent with Dr. Pendleton's opinion regarding the limiting effects of Ms. Oden's physical and mental impairments.  For example, on at least seven occasions, Dr. Pendleton noted that Ms. Oden experienced no symptoms consistent with her complaints. (Doc. 5-8, pp. 12, 15, 18, 27, 30, 36, 38; Doc. 5-11, p. 22).  All but two of Dr. Pendleton's treatment notes reveal that Ms. Oden's abdomen was soft and nontender with normal bowel sounds.  (Doc. 5-8, pp. 13, 16, 19, 22, 25, 31, 33, 37 39; Doc. 5-11, pp. 19, 23, 26).  Most of Dr. Pendleton's treatment notes contain no musculoskeletal findings. The two treatment notes that reference Ms. Oden's musculoskeletal system indicate that Ms. Oden had full range of motion, no tenderness, deformity, swelling, or masses.  (Doc. 5-8, p. 22; Doc. 5-11, p. 19).

Dr. Snow performed knee surgery on July 11, 2012.  (Doc. 5-9, p. 7).  Based on his post-operative examination of Ms. Oden on July 30, 2012, Dr. Snow reported that Ms. Oden was "doing much better with the knee with pain being much diminished.  There is no popping or giving way now."  (Doc. 5-9, p. 3).  Dr. Snow noted that Dr. Pendleton already had placed Ms. Oden on "off duty status until the middle of September."  (Doc. 5-9, p. 3).  Dr. Snow added, "[Ms. Oden] tells me that she has set that date as the date for her retirement as well."  (Doc. 5-9, p. 3).  Dr. Snow noted that Ms. Oden was still using crutches and was "still not able to go back to work," but "with a few weeks of therapy session to improve her"

strength and wean herself from the crutches, "she could be released … shortly after her next visit in three weeks." (Doc. 5-9, p. 3). The July 30, 2012 record is the last medical record from Dr. Snow in the administrative record.

Dr. Pendleton performed an examination on January 7, 2013. (Doc. 5-11, p. 25). Ms. Oden complained of recurrent and persistent diarrhea with rectal bleeding, shortness of breath, cough, and intermittent joint pain associated with muscle spasms. (Doc. 5-11, p. 25). Ms. Oden did not mention her fibromyalgia. Dr. Pendleton also noted that Ms. Oden complained of nausea and constipation; Ms. Oden did not suffer from vomiting or experience any weight gain or weight loss. (*Id.*). Dr. Pendleton noted that Ms. Oden complained of diffuse joint pain, but no swelling, stiffness, or muscle pain. (*Id.*). Dr. Pendleton explained that Ms. Oden suffered "No difficulty walking, No Numbness, no Tingling." (*Id.* at 26). The medical record states that Ms. Oden weighed 127 pounds. (*Id.*). A gastrointestinal examination revealed that Ms. Oden's abdomen was soft and nontender, and she had normal bowel sounds. (*Id.*).

On March 5, 2013, Ms. Oden had a colonoscopy to explore the cause of her abdominal pain. (Doc. 5-11, p. 32). Dr. Richard McGlaughlin wrote that Ms. Oden "had extensive ischemic gut resected and has a lot of scar tissue. She complains of many varieties of abdominal pain. . . . Endoscopy was normal." (*Id.*). The colonoscopy revealed that Ms. Oden's colon was "negative for angiodysplasia,

polyp, mass, or significant diverticular disease." (*Id.*). Dr. McGlaughlin recommended a "high fiber diet and fiber supplements. Exercise program and weight control. Monitor abdominal pain. We can give her empiric antispadmodics periodically." (*Id.*). This colonoscopy does not provide objective medical evidence to support Ms. Oden's testimony, and Dr. McGlaughlin's records indicate that he did not consider her condition severe or debilitating, given that Mr. McGlaughlin directed Ms. Oden to participate in an exercise program.

Ms. Oden was admitted to UAB's emergency room on April 22, 2013 for "flu like symptoms" and spinal pain. (Doc. 5-13, p. 18). Ms. Oden also complained of "pain and tightness into jaw and neck with numbness into her right arm." (*Id.*). Dr. David Denney examined Ms. Oden. (*Id.* at 19). According to his records, Dr. Denney found that Ms. Oden was negative for "recent illness, recent injury… problems with vision, eye pain… abdominal pain, diarrhea, nausea, vomiting… [and] problem urinating." (*Id.*). Ms. Oden reported that she suffered from "headache… chest pain/discomfort, palpitations… cough, shortness of breath." (*Id.*). Dr. Denney noted that Ms. Oden's abdomen was soft and non-tender. (*Id.* at 24). Dr. Denny also examined Ms. Oden's musculoskeletal system and found "non-tender, painless ROM" in her back and "full ROM" for her extremities, including her legs. (*Id.* at 24). As for psychological symptoms, Dr.

Denney determined that Ms. Oden had a "normal affect" psychologically.  (*Id.* at 26).

On July 2, 2013, Dr. Pendleton examined Ms. Oden for the last time on record.  Ms. Oden complained of persistent and chronic joint span, spasms, abdominal pain, nausea, cough, and congestion. (Doc. 5-11, p. 18).  Ms. Oden was upset because her mother died several weeks before.  (*Id.*).  Dr. Pendleton noted that Ms. Oden's symptoms included muscle aches, poor appetite, shortness of breath, abdominal pain, nausea, and joint pain.  Ms. Oden did not experience vomiting, diarrhea, or constipation.  (*Id.*).  Dr. Pendleton made no note of leg or joint pain, and there was no evidence of incontinence.  (*Id.* at 18-19).  Ms. Oden's weight had increased 25 pounds since her January 2013 visit with Dr. Pendleton. (*Id.* at 19).  Dr. Pendleton's physical exam found Ms. Oden's gastrointestinal system to be "soft, nontender."  (*Id.*).  Ms. Oden's musculoskeletal system had a full range of motion, no tenderness, no deformity, no swelling, no masses, and no atrophy.  Ms. Oden's reflexes and gait were also normal.  (*Id.*).

Dr. Pendleton's findings regarding Ms. Oden's limitations also are not supported by objective medical findings.  Dr. Pendleton's October 18, 2013 report is conclusory.  Dr. Pendleton opined that Ms. Oden was "permanently disabled." (Doc. 5-13, p. 38).  The report asked Dr. Pendleton to list "supporting evidence for the diagnoses that cause the disability."  (*Id.*).  Dr. Pendleton's response lists the

diagnoses but provides no supporting evidence for the diagnoses. Also, Dr. Pendleton only wrote "above," when asked to list the objective findings that supported his conclusion that Ms. Oden is disabled. (*Id.*). The information that appears "above" is the list of diagnoses. The list of diagnoses does not contain objective findings.

Accordingly, substantial evidence supports the ALJ's decision to give reduced probative weight to Dr. Pendleton's opinion. *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *see also Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 862 (11th Cir. 2012) (substantial evidence supported the ALJ's decision to give less weight to a treating physician's opinion when the doctor's opinion was "inconsistent with the medical evidence on record and was not supported by any treatment notes or by an analysis of any test results.").

**B.    The ALJ properly rejected Ms. Oden's subjective complaints of pain.**

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. (2015) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)).  A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).  If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so."  *Wilson,* 284 F.3d at 1225.  "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam); *see* SSR 16-3P, 2016 WL 1119029 at *9 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

Ms. Oden testified that, due to her narcotics medication, she has been unable to drive since her retirement in 2012.  (Doc. 5-3, p. 41).  Ms. Oden testified that she suffered light-headedness, nausea, and vomiting as side-effects from medications she uses to control her various ailments.  (*Id.* at 61).   Ms. Oden

explained that she is "continually having pains with [her] – very bad pains with [her] stomach, and [she is] confined to the restroom." (*Id.* at 50). She stated that any eating caused her "severe pains, and throwing up, nausea, and just hurting real bad." (Doc. 5-3, p. 50). She reported that she cannot control her bowels and has to "take clothes around, for the embarrassment of [her] messing up [her] clothes and things." (*Id.* at 51). Ms. Oden believed she averaged more than 5-6 bowel movements a day. (*Id.* at 62). She testified that this caused her anxiety and depression. (*Id.* at 51). Ms. Oden later explained that she wore pads, but not special underwear, to deal with her incontinence. (*Id.* at 59-60).

Ms. Oden also testified that she feels pain from her bypass and trouble with her digestive system when she is able to keep food down. (Doc. 5-3, p. 52). Ms. Oden stated that Dr. Pendleton "told [her she] can't lift no more than 10 pounds" because of her stomach conditions. (*Id.* at 53). Ms. Oden reported that Dr. Pendleton told her to avoid stressful stimuli, including television, to aid her symptoms. (*Id.*). Ms. Oden stated she still tried to be around others "on a daily basis." (*Id.* at 60-61).

Ms. Oden testified that she suffered from arthritis in her leg joints since undergoing surgery on her right knee. (Doc. 5-3, p. 54). She stated that she uses crutches and a cane to move effectively. (*Id.*). Ms. Oden estimated that she could be on her feet "for an hour straight" before her arthritis pain required her to sit

down.  (*Id.* at 56).  Ms. Oden stated these issues were exacerbated by hypertension which made it feel "like I'm on pins and needles in my feet, and my feet swells [sic]."  (*Id.* at 57).

The ALJ applied the correct legal standard when examining Ms. Oden's subjective complaints.  The ALJ explained that Ms. Oden's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Doc. 5-3, p. 20).  The ALJ then found that Ms. Oden's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible."  (*Id.*).  Substantial evidence supports the ALJ's credibility determination.

The ALJ rejected Ms. Oden's subjective pain testimony regarding her physical symptoms, noting:

> With regard to the claimant's physical pain, nausea, diarrhea, and musculoskeletal symptoms, the objective evidence does not support her allegations that she experiences a disabling level of stomach upset, diarrhea, joint pain, or other musculoskeletal pain. The evidence shows that the claimant had normal colonoscopy and endoscopy findings and only showed some abdominal tenderness during her consultative examination. The claimant did not need any special treatment as a result of her stomach complaints and her weight generally remained stable despite her allegations that she was having ten bowel movements per day. . . . Although the claimant alleges that she was also experiencing significant knee and musculoskeletal pain, the same month as her knee surgery was performed she reported significant improvement in her pain and symptoms. . . . The claimant's physician also noted that the claimant could be released to work after physical therapy. . . . In 2013, the claimant exhibited overall normal physical signs despite her allegations of pain and

illness. As a result, the evidence does not support the claimant's allegations that she experiences a disabling level of pain or physical symptoms and these allegations are not credible.

(*Id.*) (citations omitted).   Regarding Ms. Oden's abdominal pain, the ALJ referenced Ms. Oden's normal colonoscopy and endoscopy (Doc. 5-11, p. 32), and Dr. Pendleton's treatment notes demonstrating that generally Ms. Oden's abdomen was "soft [and] nontender" with normal bowel sounds.  (Doc. 5-8, pp. 13, 16, 19, 22, 28, 31, 34, 37; Doc. 5-11, pp. 19, 23, 25-26).[1]   The ALJ also explained that Ms. Oden had not sought treatment from a specialist for her abdominal pain, and treatment notes reflect that Ms. Oden's weight remained relatively stable despite her allegation that she has 10 bowel movements a day.  (Doc. 5-8, pp. 13, 16, 19, 22, 25, 28, 31, 34, 37; Doc. 5-11, pp. 19, 23, 26).

Regarding Ms. Oden's knee and musculoskeletal pain, the ALJ noted that the same month that Ms. Oden had knee surgery, she reported to Dr. Snow that "[s]he [wa]s doing much better with the knee with pain being much diminished. There is no popping or giving way now." (Doc. 5-9, p. 3).  The ALJ also noted that Dr. Snow indicated that Ms. Oden could return to work after she completed physical therapy.  (Doc. 5-9, p. 43).  The ALJ referenced 2013 treatment records

---

[1] The record contains over 10 documented office visits with Dr. Pendleton.  Only twice did Dr. Pendleton find that Ms. Oden's abdomen was positive for tenderness.  (Doc. 5-8, pp. 25, 39).

that reveal overall benign examination findings.  (Doc. 5-11, p. 19; Doc. 5-13, pp. 18-31, 35).  The ALJ's conclusions are supported by the record.[2]

Though Ms. Oden complained of "daily" bowel trouble, her medical record contradicts her testimony.  Ms. Oden did not complain of bowel trouble when admitted to UAB in April 2013 (Doc. 5-13, pp. 18-26), did not have abdominal pain during numerous doctor visits (Doc. 5-8, pp. 13, 16, 19, 22, 28, 31, 34, 37; Doc. 5-11, pp. 19, 23, 25-26), did not experience vomiting or constipation during her last visit to Dr. Pendleton (Doc. 5-11, p. 18), and gained weight over a six-month period.  (*Id.* at 19, 26).  Ms. Oden did not report incontinence to Dr. Pendleton or doctors at UAB.

Ms. Oden's description of the severity of her joint pain is also contradicted by the record.  Dr. Snow noted significant improvement the last time Dr. Snow saw Ms. Oden.  (Doc. 5-9, p. 3).  Furthermore, Ms. Oden had no swelling, tenderness, or limited range of movement in her knee during many of her doctor's visits. (Docs. 5-11, pp. 19, 25; Doc. 5-13, pp. 18-26).

Finally, there is no information in either Ms. Oden's statements to doctors or in her doctor's objective medical findings that substantiate the pain she attributes to fibromyalgia.

---

[2] Ms. Oden sought medical treatment for her ailments.  Other than pain medication, she received little medical treatment; none of her treatments suggest debilitating impairments.

The ALJ also gave little credit to Ms. Oden's testimony about the severity of her mental symptoms because "[Ms. Oden] has very limited mental health treatment and during her consultative examination in August 2012 she exhibited normal concentration and attention, thought processes, and she reported spending time with her family regularly and reading the Bible." (Doc. 5-3, p. 21) (citing Doc. 5-9, pp. 30-32).   Dr. Williams Biedleman diagnosed Ms. Oden with mild depression.  (Doc. 5-9, pp. 30-32).  Dr. Biedleman opined that Ms. Oden "appears capable of functioning independently and remembering simple instructions.  She should be able to respond appropriately to fellow employees and supervisors, as well as cope with ordinary work pressures.  Again, she emphasized her physical problems as being her work impediments."  (Doc. 5-9, p. 32).  The ALJ noted that Ms. Oden's "longitudinal treatment notes do not contain any further indication that the claimant has significant limitations due to her mental impairments."  (Doc. 5-3, p. 21).

The ALJ provided specific reasons supported by the record for rejecting Ms. Oden's subjective testimony about her mental and physical impairments. Therefore, substantial evidence supports the ALJ's reasons for rejecting Ms. Oden's subjective complaints of pain.  *See e.g., Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 712 (11th Cir. 2015) ("The ALJ explained that Mr. Duval's testimony was not credible to the extent it was unsupported by the objective

medical evidence and then discussed at length why similar opinions from Mr. Duval's treating medical providers were unsupported by the record. From this discussion, we can clearly infer what testimony from Mr. Duval the ALJ found lacking in credibility and why it was discredited."); *Eckert v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 784, 791 (11th Cir. 2005) ("[T]he credible medical evidence, as found by the ALJ, did not confirm the severity of the alleged pain and the objectively determined medical condition was not of such a severity that it can reasonably be expected to give rise to the alleged pain.").

## V.    CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Accordingly, the Court affirms the Commissioner.  The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 8, 2017.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

22